■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK NONNI, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Harrington, J.), rendered May 9, 1986, convicting him of robbery in the first degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress certain evidence.

Ordered that the judgment is affirmed.

On June 22, 1985, at approximately 10:30 P.M., a robbery occurred at a McDonald's restaurant in Hempstead, Long Island, perpetrated by two men wearing ski masks. One of the men was described as wearing a dark-colored warm-up suit and was armed with a sawed-off shotgun. Later that evening, the police obtained information from an accomplice whom they apprehended who agreed to lead them to where the defendant and another participant in the robbery lived. Subsequently, at 5:00 A.M., the police arrived at the defendant's

Cambria Heights residence and knocked at the side door. A voice asked who was there, to which Detective McCormack replied, "Police". The door then opened and the defendant stood in the doorway. When asked by the police to identify himself, the defendant responded that his name was "Mark Nonni". Detective McCormack then announced from his position outside the doorway that the defendant was under arrest. The defendant responded by stating, "Let's take it off the street". The defendant thereupon turned and walked into the house with the police following him.

Upon entering the premises and accompanying the defendant upstairs to his bedroom where he was permitted to dress, the police observed a dark-colored warm-up suit and a shotgun sleeve lying on the floor. Detective McCormack returned to the defendant's house after another accomplice had been arrested and, with the signed consent of the defendant's mother, conducted a search of the defendant's house, which revealed a sawed-off shotgun containing four live rounds in it. Subsequently, the police transported the defendant to the police station and administered *Miranda* warnings, after which the defendant agreed to make a statement in which he admitted participating in the robbery.

The hearing court denied those branches of the defendant's omnibus motion which were to suppress evidence. Although the defendant argued, *inter alia,* that his warrantless arrest was effected in violation of the rule enunciated in *Payton v New York* (445 US 573), the hearing court concluded that the defendant's voluntary act of opening his door in response to the police inquiry, his revealing himself to the police at the threshold of his house, and his inviting them into his home, precluded the existence of any alleged *Payton* violation. We agree.

It has been noted that *Payton v New York (supra)* "precludes the introduction of evidence obtained as the result of a warrantless, nonconsensual entry into a suspect's home in order to make an arrest" *(People v Kozlowski,* 69 NY2d 761, 762, *rearg denied* 69 NY2d 985). However, as the Supreme Court observed in *Katz v United States* (389 US 347, 351), "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection". The defendant was arrested in a public place—at the threshold of his residence—and thus, was not in an area in which he had any expectation of privacy *(see, United States v Santana,* 427 US 38, 42-43).

At bar, after the arresting officers identified themselves as

the police, the defendant voluntarily opened his door, stood in the doorway, identified himself and, when the police announced from the outside of his house that the defendant was under arrest, he invited them into the premises by stating, "Let's take it off the street". In light of the foregoing, the defendant's arrest does not implicate the Fourth Amendment concerns underlying the Supreme Court's decision in *Payton v New York (supra)*.

Viewing the evidence in the light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620), we find it legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]). Brown, J. P., Kunzeman, Rubin and Kooper, JJ., concur.