People v Honyghan (2026 NY Slip Op 50154(U))

[*1]

People v Honyghan

2026 NY Slip Op 50154(U)

Decided on February 5, 2026

Criminal Court Of The City Of New York, New York County

Shamahs, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 5, 2026
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

againstDaryll Honyghan, Defendant.

CR-033093-25NY

For Defendant: New York County Defender Services (Scott Gallagher Esq. of Counsel)For the People: Alvin Bragg, New York County District Attorney's Office (ADA Natalie Mishkin, Esq. of Counsel)

Elizabeth Y. Shamahs, J.

On October 15, 2025, at approximately 8:30 AM, in the subway station at State Street and Battery Place, New York, New York, defendant, Daryll Honyghan, rubbed and thrust his penis against the complainant's buttocks over her clothing without her consent. Defendant also threw rubber and plastic construction items at the complainant, causing bruising to her arm, shoulder blade, and right leg, as well as substantial pain.
For these acts, defendant was subsequently arrested and charged with one count of Forcible Touching (Penal Law [PL] § 130.52), two counts of Assault in the Third Degree (PL §§ 120.00 [1], [3]), one count of Aggravated Harassment in the Second Degree (PL § 240.30[4]), one count of Sexual Abuse in the Third Degree (PL § 130.55), one count of Attempted Assault in the Third Degree (PL §110/120.00[1]), and one count of Harassment in the Second Degree (PL § 240.26) in New York County Criminal Court.
Now, in papers dated November 21, 2025, defendant, through counsel, moves this Court for a Bill of Particulars, for the preclusion of prior bad act evidence, for the suppression of evidence, for the preclusion of evidence, and for further motions. The People oppose, in papers dated December 19, 2025. Defendant further moves this Court in reply papers, dated December 29, 2025, for the suppression of physical evidence. The People oppose.BILL OF PARTICULARSDefendant's moves this Court for an Order directing the People to supply him with a Bill of Particulars under Criminal Procedure Law (CPL) §200.95. In support of this motion, he argues that the accusatory instrument is factually vague and conclusory, and that defendant cannot adequately prepare a defense without the information requested with respect to the offenses charged. The People oppose, arguing that the facts supplied in their Automatic Discovery Form (ADF) and other discovery adequately apprises defendant of the charges, and [*2]that a Bill of Particulars is therefore unnecessary. They additionally contend that the rest of defendant's requests are evidentiary matters not within the scope of CPL §200.95.
The Court has reviewed the People's ADF, along with the Criminal Court information, and holds that they clearly apprise defendant of the conduct constituting the subject of the accusations made against him with particularity, rendering a Bill of Particulars moot. Moreover, this Court notes that defendant has access to all the discovery available in this case and was served with a COC. It therefore cannot be credibly claimed that defendant is ignorant of the substance of the accusation. Accordingly, defendant has already been provided all the particulars to which he is entitled. See CPL § 200.95. 
The other information requested is evidentiary detail beyond the scope of a bill of particulars. See People v Davis, 41 NY2d 678, 680 (1977) ("[a] bill of particulars serves to clarify the pleading; it is not a discovery device"). The remaining matters sought are either beyond the scope of CPL § 200.95 or are matters of evidence. Therefore, pursuant to CPL § 200.95(4), the People do not need to supply further particularization of the information and ADF. Hence, defendant's motion is denied.

PRIOR BAD ACTS OR PRIOR CONVICTIONS
Defendant seeks the preclusion of using defendant's prior bad acts and/or prior convictions at trial pursuant to People v Molineux, 168 NY 264 (1901), People v Ventimiglia, 52 NY2d 350 (1981), and People v Sandoval, 34 NY2d 371 (1974) on the People's direct case or upon cross-examination.
Evidence of uncharged crimes is inadmissible where it is offered solely to raise an inference that a defendant has a criminal propensity. People v Molineux, 168 NY 264 (1901); People v Wright, 288 AD2d 409 (2d Dept 2001). Such evidence may be admitted, however, if it helps to establish a defendant's motive, intent, identity, knowledge, common scheme or plan, lack of mistake or accident, to complete the narrative of the crime, or provide the jury with background information. See People v Molineux, 168 NY 264 (1901); People v Ventimiglia, 52 NY2d 350 (1981); People v Lewis, 69 NY2d 321 (1987); People v Allweiss, 48 NY2d 40 (1979); People v. Davis, 169 AD2d 774 (2d Dept 1991). In order to use this evidence, the People are required to notify the court and defendant, prior to jury selection, of their intent to introduce the evidence as part of the case-in-chief and identify the basis upon which they consider it admissible. People v Ventimiglia, 52 NY2d 350 (1981). Once a showing is made that the evidence is relevant, a trial court may admit the evidence as long as its probative value outweighs its potential prejudice. People v Hudy, 73 NY2d 40, 54-55 (1988); People v Alvino, 71 NY2d 233, 241-42 (1987). The permissible scope of such evidence rests largely, if not completely, with the trial court. See People v Hudy, 73 NY2d 40, 54-55 (1988). Accordingly, defendant's motion as to prior bad act evidence is deferred to the trial court.
Should he testify, defendant, like any other witness, places her credibility in issue. Although a witness may not be questioned about an arrest per se, it is a provident exercise of the Court's discretion to permit cross-examination concerning any immoral, vicious, dishonest and or criminal act, even if defendant was not formally charged with it. People v Sandoval, 34 NY2d 371, 373 (1974); People v Rockwell, 18 AD3d 969 (3d Dept 2005); People v Di Bella, 277 AD2d 699 (3d Dept 2000); People v Connolly, 259 AD2d 1039 (4d Dept 1999); People v Maiolo, 122 AD2d 586 (4d Dept 1986); Prince, Richardson on Evidence, 11th Ed., 6-406. A witness may also be impeached by instances of conduct demonstrating a "willingness ... to place his self-interest ahead of principle or the interests of society." People v. Walker, 83 NY2d 455, 461—462 (1994).
The People's disclosure obligation is governed by People v Sandoval, 34 NY2d 371 (1974), which directs the People to notify the defendant, prior to the commencement of jury selection, of the acts which they will seek to use for impeachment purposes. However, it is defendant who must demonstrate that the prejudicial effect of such evidence so far outweighs its probative worth that it must be excluded, as it is the defendant who bears the burden of persuasion. See People v Sandoval, 34 NY2d 371, 378 (1974). The permissible scope of such impeachment evidence rests largely, if not completely, with the trial court. People v Gray, 84 NY2d 709, 712 (1995); People v Walker, 83 NY2d 455, 459 (1994). Accordingly, defendant's motion as to prior convictions is therefore deferred to the trial court. People v Sandoval, 34 NY2d 371 (1974). 

OUT-OF-COURT IDENTIFICATION EVIDENCE
Defendant moves this Court to suppress evidence, or for hearings alternatively, related to all properly noticed identification procedures and to preclude evidence as to unnoticed identifications. The only noticed identification procedure is the complainant's identification of defendant from the video surveillance footage depicting the incident. But undue suggestiveness, at the heart of Wade jurisprudence, is not implicated when a victim views an actual depiction of the crime, such as on video surveillance, where they are depicted themselves. People v Gee, 99 NY2d 158, 163 (2002). Accordingly, it was not an identification procedure within the ambit of CPL §710.30, and the People did not have to provide notice of it. Gee, 99 NY2d at 162. See also People v Tas, 51 NY2d 915 (1978). The mere fact that the People did serve CPL §710.30 notice on defendant does not transform it into an identification procedure. People v Allen, 162 AD2d 538 (2nd Dept 1990); People v Twitty, 223 AD2d 744 (2nd Dept 1996). Accordingly, suppression and preclusion are denied without a hearing.
Regarding unnoticed identifications, it is unclear what unnoticed identifications defendant specifically seeks to preclude. But, throughout their papers, the parties both discuss two non-eyewitnesses, an anonymous tipster who saw defendant's wanted flyer and called Crime Stoppers to relay defendant's address, as well as defendant's landlady who identified defendant as her tenant from a surveillance still. To the extent that defendant seeks to preclude either or both of these instances as unnoticed out-of-court identification procedures, those motions are denied as neither of these instances implicate CPL § 710.30(1)(b). Accordingly, for the reasons stated above, defendant's motions in this branch are denied. Defendant's related claims in this branch are similarly denied.

IN-COURT IDENTIFICATION EVIDENCE
The People have served notice of their intent to elicit a first time, in-court identification at trial pursuant to People v Perdue, 41 NY3d 245 (2023), with respect to the complainant, and defendant has moved to preclude such testimony on the ground that it would be unduly suggestive. In Perdue, the Court of Appeals held that when the People call a witness who might make a first time in-court identification, the court must ensure that defendant is aware of that possibility and can request alternative identification procedures. Id at 247. Where a defendant explicitly requests such procedures, a trial court may take any measures necessary to reduce the risk of misidentification, and the ultimate determination as to whether to admit a fist time in-court identification rests with the trial court. Id at 247-248. The court must balance the probative value of the identification against the dangers of misidentification and other prejudice to a defendant. Id at 248.
Here, defendant was clearly apprised from the People's notice as to the complainant's [*3]potential first time in-court identification and consequently moved this Court to preclude it or hold a Perdue hearing assessing the probative value against the dangers of misidentification and other prejudice. Thus, a Perdue hearing is to be held before trial to assess the reliability of any potential in-court identification from the complainant.
Relatedly, it is additionally unclear from the People's papers as to whether they seek to have defendant's landlady identify defendant from surveillance video at trial. Should the People seek to elicit such testimony, a Mosley hearing is ordered to determine if such non-eyewitness lay opinion testimony should be admitted. See People v Mosley, 41 NY3d 640 (2024).

PROBABLE CAUSE / PHYSICAL EVIDENCE
Defendant moves this Court for suppression, or hearings alternatively, of tangible and intangible evidence as fruit of an illegal arrest and seizure absent probable cause.
A combined Dunaway/Mapp hearing tests an alleged violation of the Fourth Amendment to determine whether physical evidence recovered from defendant, such as a weapon or contraband, should be suppressed as the fruit of an unlawful seizure. A motion to suppress evidence as the fruit of an unlawful arrest, or for a Dunaway hearing alternatively, must be made in accordance with CPL § 710.60. Pursuant to CPL § 710.60, a defendant must state the legal ground for the motion and must also make sworn allegations of fact supporting the motion. See People v Mendoza, 82 NY2d 415 (1993); People v Smythe, 210 AD2d 887 (1997). A motion to suppress evidence as the product of an illegal arrest can be denied without a hearing when the motion lacks factual allegations to support the conclusion that defendant was unlawfully seized. See People v Brunson, 226 AD2d 1093 (4d Dept 1996); People v Purcelle, 282 AD2d 824 (3d Dept 2001). Conclusory allegations of an unlawful seizure can also result in summary denial of a suppression motion. See People v Toxey, 220 AD2d 204 (1st Dept 1995); People v Lofton, 129 AD2d 970 (4d Dept 1987).
In assessing the sufficiency of the defendant's factual allegations, and whether the defendant is entitled to a hearing, the Court of Appeals in People v Mendoza, 82 NY2d 415, 426 (1993) provided the following guidance: "[T]he sufficiency of defendant's factual allegations should be evaluated by (1) the face of the pleadings, (2) assessed in conjunction with the context of the motion, and (3) defendant's access to information." It must also be borne in mind that "[h]earings are not automatic or generally available for the asking by boilerplate allegations." Id. at 422; see also People v Long, 36 AD3d 132, 133 (2006), aff'd. 8 NY3d 1014 (2007).
Here, defendant's vague and conclusory allegation that, "he was placed into the custody of officers of the New York Police Department, who arrested and searched him on October 21, 2025. The defendant further states that the arrest and search by the police was unlawful, in that, prior to arresting him, the officers did not possess probable cause that the defendant had committed the crimes for which he now stands charged" (Defendant's Motion at 15), is woefully inadequate to raise a factual dispute warranting a suppression hearing. Defendant's papers fail to factually demonstrate how and when defendant's Fourth Amendment rights were violated and how and when he was illegally seized. Defendant does not lack access to information as he has all the discovery in this case. Moreover, evaluated against the pleadings, defendant was not charged and arrested in any type of police-citizen encounter in the Fourth Amendment context. Rather, defendant is charged with committing specific acts of violence against an identifiable person, who reported the incident. Thus, defendant has not factually demonstrated a legal basis for his requested relief.
Defendant does not fare any better with his more particularized claims seeking relief. Specifically, defendant takes issue with the anonymous tipster calling Crime Stoppers, alleging that his arrest was predicated on the anonymous tip and requesting a combined Dunaway/Mapp hearing to assess the reliability and basis of knowledge of the tip as to probable cause and to suppress defendant's arrest as fruit of the poisonous tree (Defendant's Motion at 12, 15-16). Aside from the fact that defendant was arrested pursuant to information previously supplied to police officers regarding the complainant, an identified citizen who is presumed reliable (People v Boykin, 187 AD2d 661 [2d Dept 1992]; People v Burch, 59 AD3d 266 [1st Dept 2009] [summary denial appropriate where defendant failed to raise legal basis for suppression and defendant fully aware that arrest based on citizen victim complaint]), there is no evidence that is subject to a Mapp hearing. Contrary to defendant's suggestion, an arrest itself cannot be suppressed as fruit of the poisonous tree, and defendant himself is not a suppressible fruit. United States v Crews, 445 US 463 (1980); Wong Sun v United States, 371 US 471 (1963)). See also People v Pleasant, 54 NY2d 972 (1981).
Defendant's similar contentions to suppress post-arrest observations of defendant as fruit of an illegal arrest (Defendant's Motion at 16) fail for the same reasons. Finally, defendant's contention that the sweater defendant was wearing at the time of his arrest — which was ostensibly the same sweater defendant wore during the commission of the offenses — and taken from him at the precinct should be suppressed as fruit of the poisonous tree and subject to a Mapp hearing is denied as meritless. United States v Edwards, 415 US 800 (1974) (clothing or other belongings may be seized upon arrival of the accused at the place of detention); People v Natal, 75 NY2d 379 (1990). See also People v Bacon, 19 AD3d 287 (1st Dept 2005) (both searches and seizures may be conducted at precinct upon arrest) People v. Hedges, 168 AD2d 570 (2d Dept 1990); People v Espinal, 209 AD2d 538 (2d Dept 1994). Accordingly, for all the reasons discussed extensively above, defendant's motion seeking suppression, or Dunaway/Mapp hearings, is denied as meritless. Defendant's remaining contention in this branch are similarly denied as meritless.

WARRANTLESS ENTRY IN THE HOME / PAYTON
Defendant motion seeking suppression, or hearings alternatively, on Payton violation grounds is summarily denied. See Payton v New York, 445 US 573 (1980) (holding that law enforcement cannot make a warrantless entry into an individual's home to effectuate an arrest absent exigent circumstances, consent, or hot pursuit). Defendant specifically contends that police officers knocked on defendant's door when effectuating his arrest and after defendant opened the door, they crossed the threshold and pulled defendant out while telling him to step out, placing him under arrest (Defendant's Motion and Reply at 2). This claim fails. Like a Dunaway hearing, a Payton hearing tests the propriety of an arrest [FN1]
. But neither hearing can independently suppress because, as noted above, an arrest itself is not suppressible, and defendant himself is not a suppressible fruit. Crews supra. Thus, in order to receive a Payton hearing, a defendant must additionally allege evidence recovered as fruit of the poisonous tree subject to suppression stemming from the Payton violation, which defendant has failed to do [*4]here. See People v Jones, 2 NY3d 235 (2004); People v Harris, 77 NY2d 434 (1991).
Assuming arguendo that defendant relies on the same evidence he asserted in the Mapp portion, with respect to the instant Payton claim, defendant's motion still fails for the same reasons noted supra. In any event, nothing is alleged to have been recovered from inside defendant's home and defendant's sweater was taken at the precinct, without any connection with any police entry at defendant's residence. People v Jackson, 17 AD3d 148, 149 (1st Dept 2005) (even if defendant arrested in violation of Payton, suppression not required when seizure of evidence occurred at precinct unconnected to police entry at defendant's residence); People v Jones, 2 NY3d 235 (2004) (legal arrest post Payton violation lineup occurring at police station not subject to suppression). Thus, assuming that there was a Payton violation — which the Court takes no position on but is not convinced there was [FN2]
— defendant is still not entitled to suppression on Payton grounds, or hearings alternatively. Defendant's motion is accordingly denied as meritless. Defendant's remaining contentions are additionally denied as meritless.

 OTHER MOTIONS
Defendant's remaining requests are denied as duplicative, premature, moot, unsupported by the record, or without merit. 

RESERVATION OF RIGHTS
Defendant's application for an extension of time to file additional motions is denied subject to rights under CPL § 255.20(3) to move for further leave upon good cause shown.

RESERVATION OF RIGHTS
Defendant's application for an extension of time to file additional motion is denied subject to rights under CPL § 255.20(3) to move for further leave upon good cause shown.

RECIPROCAL DISCOVERY
The People seek reciprocal discovery from defendant, namely, information pertaining to alibi. Defendant is hereby directed to supply the People with alibi information and comply with his reciprocal discovery obligations pursuant to CPL §245.20(4), including filing and serving a Defense Certificate of Compliance with the People and the Court.
The foregoing constitutes the Opinion, Decision, and Order of the Court.
Dated: February 5, 2026New York, New YorkELIZABETH Y. SHAMAHS, J.C.C.

Footnotes

Footnote 1:This Court notes that this is a simplified explanation. To be more accurate, Dunaway evaluates whether there was probable cause to arrest, while Payton assesses a warrantless entry into the home in effectuating an arrest, which may or may not have been illegal.

Footnote 2:Based upon defendant's factual allegations, here, it is unclear if a Payton violation actually occurred. Warrantless arrests where a defendant was at the doorway have been upheld. United States v Santana, 427 US 38 (1978); People v Garvin, 30 NY3d 174 (2017); People v Ashcroft, 33 AD3d 429, 429 (1st Dept 2006) (no Payton violation where police "reached in and pulled [defendant] out as he stood in close proximity to his doorway"); People v Reynoso, 309 AD2d 769, 770 (2d Dept 2003) (no Payton violation where defendant stood in front doorway and stuck his head out of the door), aff'd 2 NY3d 820 (2004). Defendant's arrest was nevertheless not illegal given that it was predicated following probable cause.